IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOXIE ATE LP d/b/a LOVELL PLACE,  )<br>         **Plaintiff and**        )<br>         **Counterclaim Defendant,** )<br>                                )<br>              v.                 )<br>                                )<br>BOSTWICK DESIGN PARTNERHIP. )<br>         **Defendant and**      )<br>         **Counterclaim Plaintiff** )<br>                                )<br>              v.                 )<br>                                )<br>ALTAIR REAL ESTATE SERVICES )<br>and ALEX ROOFING CO., INC.,  )<br>        **Third Party Defendants.**  ) | C.A. No. 21-167 Erie<br><br><br><br>District Judge Susan Paradise Baxter |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

### A.    Relevant Procedural History

On June 25, 2021, Plaintiff Moxie ATE, LP d/b/a Lovell Place ("Moxie"), a Pennsylvania limited partnership, initiated this action by filing a complaint [ECF No. 1] against Defendant Bostwick Design Partnership ("Bostwick"), an Ohio corporation, asserting claims of breach of contract on three separate grounds: failure to pay lease rent (Count I); abandonment of leased premises (Count II); and failure to remit early termination fee (Count III). Bostwick responded by filing an answer ("Answer") [ECF No. 9], asserting affirmative defenses and the following counterclaims against Plaintiff: constructive eviction (Counterclaim I); breach of contract - quiet enjoyment (Counterclaim II); breach of contract – indemnity (Counterclaim III); declaratory judgment – breach of quiet enjoyment (Counterclaim IV); negligence *per se*

1

(Counterclaim V); and strict liability for ultrahazardous activities (Counterclaim VI). In its Answer, Bostwick also asserts third party claims of negligence *per se*, strict liability for ultrahazardous activities, and negligence, against Alex Roofing Co., Inc. ("Alex Roofing") and Altair Real Estate Services ("Altair").

On August 10, 2021, Moxie filed a motion to dismiss Bostwick's counterclaims of negligence *per se* (Counterclaim V) and strict liability (Counterclaim VI), arguing that they are barred by Pennsylvania's "gist of the action" doctrine and, alternatively, fail to state claims upon which relief may be granted [ECF No. 13]. Bostwick filed a response in opposition to Moxie's motion to dismiss [ECF No. 18], to which Moxie has filed a reply [ECF No. 19]. This motion is now ripe for consideration.[1]

**B.     Relevant Factual History[2]**

On or about November 25, 2015, Moxie and Bostwick entered into a lease agreement ("Lease"), pursuant to which Bostwick agreed to lease from Moxie certain property located at 155 East 13th Street, Suite 4000, Erie, Pennsylvania ("Leased Premises"), for an initial term of ten years, which commenced on March 31, 2016 (ECF No. 1, at ¶¶ 10-11).

In the Fall of 2020, Moxie undertook to have repair work done on the roof of the Leased Premises (Id. at ¶ 23). In anticipation of the roofing project and due to the age of the building, Moxie had the roof sampled for asbestos before defining the scope of the roofing work to be

---

[1] Alex Roofing and Altair have since filed motions to dismiss Plaintiff's third-party claims against them [ECF Nos. 20 and 23]. These motions will be addressed by separate memorandum opinion and order, in due course.

[2] The factual history recited herein is limited to the parties' allegations of fact pertaining to Bostwick's counterclaims V and VI, which Plaintiff has moved to dismiss.

performed. (Id. at ¶ 24). Testing of the roof samples in the Spring of 2020 revealed the presence of asbestos in multiple areas and layers of the roof (ECF No. 9, Bostwick's Answer, at ¶ 26). Thus, the decision was ultimately made to install a new roof over the existing roof, which was located directly above the majority of Bostwick's office space (ECF No. 1, at ¶ 26; ECF No. 9, at ¶ 26). Neither Moxie nor its roofing consultant anticipated any interior asbestos issues because there was no work being conducted inside the office spaces and the work would not penetrate the "building envelope." (ECF No. 1, at ¶ 27).

Nonetheless, on November 9, 2020, Bostwick notified Moxie that dust and debris was present in its office space as a result of the roofing work. (Id. at ¶ 28). Subsequently, on November 13, 2020, Bostwick notified Moxie that the debris contained asbestos and that Bostwick had vacated the Leased Premises as a result. (Id. at ¶ 30). On November 20, 2020, Moxie had air quality testing performed by an environmental testing lab, which revealed that there were no detectable levels of airborne asbestos fibers exceeding OSHA's Permissible Exposure Limits. (Id. at ¶¶ 32-33). It was also determined that the roofing project fell below the asbestos thresholds for regulation under the EPA's asbestos National Emission Standards for Hazardous Air Pollutants ("NESHAP"), and that the asbestos-containing materials were category I non-friable asbestos. (Id. at ¶ 34).

On November 24, 2020, a visual inspection of the Leased Premises was performed by a separate environmental firm retained by Moxie in order to prepare a remediation plan. (Id. at ¶¶ 36-37). A remediation of the asbestos-containing material was subsequently performed in accordance with both the OSHA requirements and EPA's asbestos NESHAP and was ultimately completed on January 8, 2021. (Id. at ¶¶ 38-41). Post-remediation air quality testing was also

3

performed on January 8, 2021, which confirmed that there were no remaining asbestos contamination concerns. (Id. at ¶ 42).

Bostwick alleges in Counterclaim V that the roof work performed on the Leased Premises rose to the level of "renovation activity" as described in 40 C.F.R. § 61.145(a)(4) and, therefore, required Moxie to provide at least ten-days' advance notice to appropriate governmental agencies pursuant to 40 C.F.R. § 61.145(b) and/or 63 P.S. § 2108. (ECF No. 9, at ¶¶ 145, 147-148). Bostwick alleges that such notice is intended to prevent human and environmental contamination by asbestos and asbestos-containing material; yet "upon information and belief," Moxie did not provide such notice and was, thus, negligent *per se*, causing Bostwick to suffer damages. (Id. at ¶¶ 149-155).

Bostwick alleges further in Counterclaim VI that "Moxie undertook ultrahazardous and inherently dangerous roof repairs knowing that asbestos and asbestos-containing materials could be released," thereby unnecessarily creating a risk of harm to individuals and property located in the Leased Premises. (Id. at ¶¶ 160-161). In addition, Bostwick alleges that the risk of harm was "magnified by Moxie's failure to provide the requisite advance notice of the work to Bostwick," and that "no measure of care by Moxie could have prevented harm to Bostwick and its property." (Id. at ¶¶ 162-163). Consequently, Bostwick concludes that Moxie's conduct "was done with willful and wanton disregard to the health and safety of Bostwick and its employees." (Id. at ¶ 164).

## II. DISCUSSION

### A. Gist of the Action Doctrine

Plaintiff has moved to dismiss Bostwick's counterclaims of negligence *per se* (Counterclaim V) and strict liability (Counterclaim VI), arguing that they are barred by

4

Pennsylvania's gist of the action doctrine.

Under Pennsylvania law, "the gist of the action doctrine provides that a tort claim 'based on [a] party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action ... although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.'" Downs v. Andrews, 639 F. App'x 816, 819 (3d Cir. 2016), quoting Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014). However, "the simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other where such claim is collateral to the contract claim and arises from some social duty rather than the contractual relationship." Bohler-Uddeholm Am., Inc. v. Ellwood Grp, Inc., 247 F.3d 79103-04 (3d Cir. 2001). See also eToll Inc. v. Elias/Savion Adv. Inc., 811 A.2d 10, 14 (Pa.Super.2002) ("Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals")

Thus, to evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because "the nature of the duty alleged to have been breached ... [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." Bruno, 106 A.3d at 68. "In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort ... is not controlling." Id.

Here, it is apparent that Bostwick's tort claims of negligence and strict liability are premised on Moxie's alleged violation of its social duty to prevent the release of, and exposure to, asbestos and asbestos-containing material, which falls outside the confines of the parties' contractual relationship. Indeed, in support of its negligence claim, Bostwick specifically alleges

that "Moxie's obligations to adhere to state and federal regulations regarding asbestos contamination are separate, distinct, and independent from contractual duties that Moxie owed to Bostwick." (ECF No. 1, at ¶ 156). In addition, Bostwick's strict liability claim is expressly based on Moxie's alleged undertaking of "ultrahazardous and inherently dangerous roof repairs knowing that asbestos and asbestos-containing materials could be released," rather than the breach of a duty arising under the Lease. (Id. at ¶¶159-164). Contrary to Moxie's assertions, neither of these claims is merely a re-casting of a breach of contract claim. Thus, Moxie's argument that Bostwick's tort claims are barred by Pennsylvania's gist of the action doctrine is without merit.

Alternatively, Moxie argues that Bostwick's tort claims fail to state claims upon which relief may be granted. So, the merits of each claim will now be considered, in turn.

**B.     Counterclaim V – Negligence *Per Se***

Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se*. Ramalingam v. Keller Williams Realty Group, Inc., 121 A.3d 1034, 1042 (Pa. Super. 2015). However, a court will not use a statute or regulation as the basis of negligence *per se* where the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public. Centolanza v. Lehigh Valley Dairies, 635 A.2d 143, 150 (1993), aff'd 540 Pa. 398, 658 A.2d 336 (1995). In order to state negligence *per se* in Pennsylvania, a plaintiff must allege: "(1) the purpose of the statute [is], at least in part, to protect the interest of a group of individuals, as opposed to the public generally; (2) the statute or regulation must clearly apply to the conduct of the defendant; (3) the defendant must violate the statute or regulation; and (4) the violation of the statute must

6

be the proximate cause of the plaintiff's injuries." Ramalingam, at 1042-43, citing Schemberg v. Smicherko, 85 A.3d 1071, 1073-74 (Pa. Super. 2014) (citation omitted).

Here, Bostwick's negligence *per se* claim is based upon Moxie's alleged violation of Pennsylvania's Asbestos Occupations Accreditation and Certification Act of 1990, 63 P.S. §§ 2101-2112 ("AOACA"), and EPA regulation 40 C.F.R. 61.145(b), which has been adopted and enforced by the Pennsylvania Department of Environment Protection Bureau of Air Quality ("PADEP"). (ECF No. 9, at ¶¶ 144, 147). In particular, Bostwick alleges that Moxie failed to comply with the notice requirements of 63 P.S. § 2108, which requires contractors performing work on asbestos and asbestos-containing materials to notify the Pennsylvania Department of Labor and Industry ("DOL") at least five (5) days before beginning work. In addition, Bostwick alleges that Moxie failed to comply with the notice requirements of 40 C.F.R. 61.145(b), which requires the owner of a facility to provide at least 10 days' advance written notice to the EPA and PADEP of a renovation activity involving asbestos and asbestos-containing materials. Bostwick claims that, as a result of Moxie's alleged failure to comply with these notice requirements, Bostwick sustained damages that "include but are not limited to property that had to be destroyed as a result of [asbestos] contamination, costs associated with business disruptions, and the costs of testing and inspections." (ECF No. 9, at ¶¶ 154-155).

Moxie has moved to dismiss this claim, asserting, *inter alia*, that Bostwick is unable to establish either: (i) that the notice provisions at issue are intended to protect the interest of a specific group of individuals, like Bostwick, as opposed to the public in general, or (ii) that the alleged failure to provide notice proximately caused Bostwick's injuries. The Court agrees.

7

### 1.     Intended Beneficiaries of Legislation at Issue

In its opposition brief, Bostwick argues that "[t]he federal and Pennsylvania regulations are intended to limit the exposure of tenants and occupants, like Bostwick, to harmful asbestos and asbestos-containing materials." (ECF No. 18, at pp. 10-11). However, this alleged intention is absent from the express purposes of the regulations themselves.

#### a.     Pennsylvania's AOACA

The purpose of Pennsylvania's AOACA is to ensure that persons engaged in any asbestos occupation are properly certified.[3] While building tenants like Bostwick may incidentally benefit from the DOL's enforcement of its certification requirements, they are not the intended object of the Act's purpose. Moreover, it is apparent that the Act does not create a private cause of action arising from the failure to comply with its requirements. Rather, enforcement of the Act's requirements is limited to the DOL and/or governmental authorities. 63 P.S. §§ 2106, 2109. Thus, the policy of the AOACA would not be furthered by allowing it to serve as the basis for a claim of negligence *per se*. See Fallowfield Dev. Corp. v. Strunk, 1990 WL 52745, at *19 (E.D. Pa. Apr. 23, 1990), citing Frederick L. v. Thomas, 578 F.2d 513, 517 (3d Cir. 1978) ("a court must examine the legislation and determine whether the policy of the statutory scheme will be furthered by allowing it to serve as the basis for a claim of negligence *per se*").

#### b.     Clean Air Act

The EPA regulations at 40 C.F.R. Part 61, Subpart M, promulgate rules under section 112 of the Clean Air Act ("CAA") for asbestos emissions. National Emission Standards for Hazardous Air Pollutants; Asbestos NESHAP Revision, 55 Fed. Reg. 48,406 (Nov. 20, 1990); 40

---

[3] This purpose is derived from 63 P.S. § 2103, which provides that "It shall be unlawful for any person to engage in any asbestos occupation in any building without proper certification for that occupation from the department."

C.F.R. § 61.140, *et seq.* Failure to comply with the requirements set out in the asbestos NESHAP constitutes a violation of Section 112 of the CAA. 42 U.S.C. § 7412(i)(3)(A). The stated purpose of the CAA is to protect and enhance the quality of the Nation's air resources, 42 U.S.C. § 7401(b), and to encourage and promote federal, state, and local governmental action consistent with pollution prevention. 42 U.S.C. § 7401(c). Thus, the CAA and its regulations are designed to protect the general public from air pollution and contamination, not to protect building tenants and occupants from incurring the costs associated with asbestos contamination and cleanup, which is the type of harm Bostwick seeks to recover (ECF No. 9, at ¶¶ 154-155). See Gravlin v. Fredavid Builders and Developers, 677 A.2d 1235, 1239 (Pa. Super. 1996) ("it is well-settled that there must be a direct connection between the harm meant to be prevented by the statute, and the injury complained of").

Moreover, "as multiple federal courts have recognized, the Clean Air Act does not authorize a private cause of action for compensatory damages for alleged violations of the Act…." Abuhouran v. Kaiserkane, Inc., 2011 WL 6372208 (D.N.J. Dec. 19, 2011) (listing cases). The absence of a private cause of action has been found to be "an indicator that the statute did not contemplate enforcement for individual harms." Wagner v. Anzon, Inc., 684 A.2d 570, 575 (Pa. Super. 1996), citing Centolanza, 635 A.2d at 150. See, Satterfield v. J.M. Huber Corp., 888 F.Supp. 1567, 1571 (N.D.Ga. 1995) (granting summary judgment for defendant on negligence *per se* claims based on finding that both "the federal and Georgia Clean Air Acts do not provide for an action for private recovery"). Thus, it is apparent that neither Bostwick, as an occupant and tenant of a building contaminated by asbestos, nor the costs it seeks to recover, are within the intended purpose of the CAA to protect and/or remediate.

### 2. Proximate Cause of Bostwick's Injuries

Additionally, Bostwick has failed to establish how Moxie's alleged failure to provide advance notice to governmental authorities of its roof renovation activity was the proximate cause of Bostwick's claimed injuries. Bostwick merely alleges that it "has sustained damages as a result of Moxie's failure to provide notice of the work as required by law." (ECF No. 9, at ¶ 154). Such a conclusory allegation is insufficient to establish proximate cause.

Bostwick attempts to bolster its position in its opposition response by adding the baffling argument that "Moxie's failure to provide notice under the federal and state regulations ensured that Bostwick did not receive notice of the potential for asbestos contamination." (ECF No. 18, at p. 12). But how is this so if the regulations merely require prior notice to be given to state and federal environmental agencies? There is no provision in either the AOACA or the CAA's regulations that would require Moxie and/or the governmental authorities to alert Bostwick, or any other member of the public, that notice has been given under the statute. So how would Bostwick have received a "forewarning or notice of a possibility of contamination" (Id.)? It is apparent that Bostwick's argument in this regard does nothing to establish proximate cause.

For the foregoing reasons, Bostwick's negligence *per se* claim based upon Moxie's alleged violations of the notice requirements of the AOACA and EPA regulation 40 C.F.R. § 61.145(b) is not cognizable and will be dismissed. Although Bostwick has requested leave to amend, any amendment would be futile given the deficiencies noted above. Thus, dismissal of this claim will be with prejudice.

### B. Counterclaim VI – Strict Liability for Ultrahazardous Activities

In order to properly state a claim for strict liability for ultrahazardous activities m Pennsylvania, a plaintiff must allege that defendant conducted an activity that: (1) is not of

common usage; (2) creates a foreseeable and highly significant risk of physical harm even when reasonable care is exercised by all actors; and (3) results in physical harm to the plaintiff. Albig v. Mun. Auth. of Westmoreland Cnty., 502 A.2d 658, 662 (Pa. Super. 1985); see also Kamuck v. Shell Energy Holdings GP, LLC, 2015 WL 1345235, at *17 (M.D. Pa. Mar. 25, 2015) (finding natural gas drilling activities were not abnormally dangerous and strict liability should not apply because it could be done safely and was common and valuable to society). A claim for strict liability for abnormally dangerous activities can only be stated if the activity itself, and not the manner in which the activity is performed, is abnormally dangerous. In re One Meridian Plaza Fire Litigation, 820 F. Supp. 1460, 1474-75 (E.D. Pa. 1993), *rev'd on other grounds sub nom.*

A plaintiff cannot simply allege that the defendants acted in a way that was inherently dangerous. Instead, the Court must consider the following factors: the existence of a high degree of risk of some harm to the person, land or chattels of others; the likelihood that the harm which results from it will be great; the inability to eliminate the risk by the exercise of reasonable care; the extent to which the activity is not a matter of common usage; the inappropriateness of the activity to the place where it is carried on; and, the extent to which its value to the community is outweighed by its dangerous attributes. Albig, 502 A.2d at 662. "The court must determine as a matter of law whether an activity is abnormally dangerous so that strict liability will be imposed." Melso v. Sun Pipe Line Co., 576 A.2d 999, 1003 (Pa. Super. 1990).

Here, Moxie argues that "Bostwick does not allege any facts to support that roof repair, even of roofs with asbestos-containing fibers, is an activity that is 'not of common usage.'" (ECF No. 14, at p. 8). Despite that assertion, the details of the actual roof repairs

that were performed have yet to be discovered or disclosed to the Court. Thus, the Court is unable at this juncture to make a definitive finding as to whether or not the roof repair at issue was "of common usage." Moxie also argues that "Bostwick fails to claim that there was a high degree of risk of some harm to anyone, including Bostwick, from repairing a roof containing some asbestos material" (Id. at p. 9). However, this is precisely what Bostwick alleges in its counterclaim - "[t]he roof work unnecessarily created a risk of harm to individuals located in the Leased Premises and to Bostwick's property" (ECF No. 9, at ¶ 161).

Indeed, the Court finds that Bostwick's allegations are minimally sufficient to establish the contours of a strict liability claim at the pleading stage. Consequently, the Court will deny Moxie's motion to dismiss Counterclaim VI. Nonetheless, Moxie may reassert its challenge to Bostwick's strict liability claim in a motion for summary judgment, if warranted, after a more fully developed record has been established through discovery. See Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506 (M.D. Pa. 2010) ("since the determination of whether or not an activity is abnormally dangerous is fact-intensive, courts often wait until discovery is complete before making this determination").

An appropriate Order follows.