## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MOXIE ATE LP, d/b/a/ LOVELL PLACE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:21-cv-167** |
| | ) | |
| **BOSTWICK DESIGN PARTNERSHIP,** | ) | |
| | ) | |
| **Defendant and** | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ALEX ROOFING CO., INC. and** | ) | |
| **ALTAIR REAL ESTATE SERVICES,** | ) | |
| | ) | |
| **Third-Party Defendants.** | ) | |

### MEMORANDUM OPINION

## I.  INTRODUCTION

The within civil action arises out of a dispute between Moxie Ate LP, d/b/a Lovell Place ("Moxie") and Bostwick Design Partnership ("Bostwick") concerning commercial lease obligations and related claims of property damage and other pecuniary loss.  Presently pending before the Court are motions by Third-Party Defendants Alex Roofing Co., Inc. ("Alex" or "Alex Roofing") and Altair Real Estate Services ("Altair") to dismiss the third-party claims asserted against them by Bostwick.  For the reasons that follow, the motions to dismiss will be granted, but Bostwick will be granted leave to replead certain causes of action as additional counterclaims.

1

A. **Relevant Factual History**

On or about November 25, 2015, Moxie and Bostwick entered into a commercial lease agreement, pursuant to which Bostwick agreed to lease from Moxie certain property located at 155 East 13th Street, Suite 4000, Erie, Pennsylvania ("Leased Premises") for an initial term of ten years, commencing on March 31, 2016.  ECF No. 1, ¶¶10-11; ECF No. 1-1; ECF No. 9, ¶1, 11. During this time, Altair acted as the property manager of the Leased Premises on Moxie's behalf. ECF No. 9, ¶31.

In the Fall of 2020, Moxie undertook work on the roof of the Leased Premises, which was performed by Alex Roofing.  ECF No. 1, ¶23; ECF No. 9, ¶¶ 23, 26, 166.  According to Bostwick, Moxie and its contractors were aware of the presence of asbestos and asbestos-containing materials in the Leased Premises before undertaking the roof work.  ECF No. 9, ¶26. Specifically, Bostwick avers that Microbac Laboratories Inc. conducted testing in March of 2020 which showed that asbestos was present in multiple areas and layers of the roof.  *Id.*  Bostick's offices occupied most of the office space directly below the roof -- a configuration which Bostwick claims "ensured that work on the roof would cause debris to fall into [its] office space," thereby making asbestos contamination "reasonably foreseeable."  *Id.*

On November 9, 2020, Bostwick notified Moxie and Altair that dust and debris was present in its office space as a result of the roofing work.  ECF No. 1, ¶28; ECF No. 9, ¶¶28, 188. Bostwick undertook its own testing of the debris, which allegedly revealed levels of asbestos and asbestos-containing materials that made it unsafe for Bostwick to continue its use of the Leased Premises.  ECF No. 9, ¶¶32-34.

2

On November 13, 2020, Bostwick notified Moxie that the debris in its area contained asbestos and that Bostwick had vacated the Leased Premises as a result.  ECF No. 1, ¶30; ECF No. 9, ¶30.  The instant litigation ensued.

### B.  Relevant Procedural History

Moxie initiated this civil action on June 25, 2021 with the filing of a three-count complaint against Bostwick that alleged various breaches of the lease agreement. ECF No. 1. Bostwick answered the complaint and asserted various counterclaims against Moxie sounding in breach of contract, negligence *per se*, and strict liability. ECF No. 9.

Included in Moxie's answer were several third-party claims against Altair and Alex Roofing alleging negligence, negligence *per se*, and strict liability for ultrahazardous activities. At bottom, Bostwick claims that the conduct of Altair and Alex Roofing has resulted in its employees being exposed to environmentally hazardous and dangerous materials.  ECF No. 9, ¶200.  Bostwick seeks damages for (among other things) its lost use of the Leased Premises, the loss of personal property due to contamination, costs associated with business disruptions, and the out-of-pocket costs associated with testing and inspections.  *Id*., ¶182-183, 201-202.

On September 15, 2021, Alex Roofing filed a motion to dismiss Bostwick's third-party claims.  ECF No. 20.  Altair filed its own motion to dismiss on September 21, 2021.  ECF No. 23.  These motions have been fully briefed and are now ripe for consideration.[1]  ECF Nos. 21, 24, 26, 27, 28, 29, 32.

---

[1] The Court previously ruled on Moxie's motion to dismiss two of Moxie's counterclaims in a Memorandum Opinion and Order dated March 31, 2022.  ECF Nos. 33 and 34.

## II.   **STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewics*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and view them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. Expounding on the *Twombly/Iqbal* line of cases, the U.S. Court of Appeals for the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010) (alteration in the original)). This

4

determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.    DISCUSSION

### A.    Compliance with Federal Rule of Civil Procedure 14(a)

Altair and Alex both argue, as initial bases for dismissal, that Bostwick's third-party claims do not comply with the requirements of Rule 14(a) of the Federal Rule of Civil Procedure.  Under that rule,

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a).  Altair and Alex interpret this rule to mean that third-party claims must be set forth in a separate, stand-alone pleading, as opposed to being incorporated in the same document as the defendant's answer.  Because Bostwick did not do so, Altair and Alex insist that the third-party claims must be dismissed.

Bostwick maintains that its method of pleading fully complied with the requirements of Rule 14(a), as the third-party claims were laid out separately within the same document that contained its answer and counterclaims against Moxie.  Bostwick further notes that it served this unified pleading upon Altair and Alex Roofing, along with a summons, as required by Rule 14. Bostwick cites numerous decisions from this judicial district wherein a defendant included third-party claims in a single pleading that also contained its answer and counterclaims.  *See* ECF No. 26 at 5-6, ECF No. 27, 5-6.[2]

---

[2] *Citing Am. Beverage Corp. et. al. v. Diageo N. Am., Inc. et. al.*, No. 2:12-cv-00601 (W.D. Pa. Jun. 8, 2012) (ECF No. 49); *The Outdoor Media Grp., LLC v. S&A Ent.*, No. 2:16-cv-01460

Technically speaking, Altair and Alex Roofing are correct in their interpretation of Rule 14(a)'s requirements.  Though the case law on this point is scarce, several federal courts have recognized the necessity of asserting third-party claims in a separate pleading.  *See, e.g., Aliya Medcare Fin., LLC v. Nickell*, No. CV 14-07806 MMM EX, 2015 WL 4163088, at *13 (C.D. Cal. July 9, 2015) (noting that "counterclaims are not the same as third party complaints, and must be filed separately"; thus, the clerk properly struck the defendant's filing styled as a combined counterclaim/third party complaint "because those two types of pleading are distinct and must be filed separately); *Stanzione v. St. Paul Fire & Marine Ins. Co*., No. 1:13-CV-863(GLS/RFT), 2014 WL 12586846, at *1 (N.D.N.Y. June 5, 2014) (court recounting "procedural mishaps" in the litigation, including the defendant's filing of a third-party complaint in the same document that contained its answer and counterclaims; court recalling that it had "informed [the defendant] that the third-party complaint must be filed as a separate pleading and [had] directed [the defendant] to do so"); *MW Universal, Inc. v. Gallant Steel, Inc*., No. 12-CV-15572, 2013 WL 12177931, at *1 (E.D. Mich. Nov. 1, 2013) (agreeing with the plaintiff that "defendants' amended third-party complaint should not be combined in the same document with their amended counterclaims"; court noting that, "[w]hile counterclaims are considered part of a defendant's answer to the complaint and are commonly included with the answer and affirmative

---

(W.D. Pa. Feb. 1, 2017) (ECF No. 28); *Pelkey v. Davidson*, No. 2:20-cv-1373-CCW (W.D. Pa Dec. 10, 2020) (ECF No. 10); *Com. Credit Grp. Inc. v. Superior Machining, Inc*., No. 3:19-cv-00105 (W.D. Pa. Aug. 9, 2019) (ECF No. 16); *Spear v. Fenkell*, Civ. Action No. 13-02391, 2014 WL 6676660 (E.D. Pa. Nov. 24, 2014) (noting that the defendant filed an answer, counterclaims, and third-party claims in a single pleading); *Pioneer Mech. Servs., LLC v. HGC Constr. Co*., Case No. 2:18-cv-507 (W.D. Pa. Apr. 26, 2018) (ECF No. 8); *Velocity International, Inc. V. Celerity Healthcare Solutions, Inc*., Case No. 2:09-cv-102 (W.D. Pa. Mar. 17, 2009) (ECF No. 12);  *WPG Subsidiary Holdings I, LLC v. City of Elizabeth*, Civ. No. 15-7876, (D.N.J. Dec. 14, 2015) (ECF No. 8).

defenses in a single document, a third-party complaint is a separate pleading and should not be so combined").

The authority referenced by Bostwick is not to the contrary.  While Bostwick cites numerous cases from this judicial district wherein defendants included third-party claims in their answer along with counterclaims, it does not appear that the practice was specifically condoned in the cases cited but merely went unchallenged.  In short, Bostwick was technically required to plead any third-party claims in a separate third-party complaint filed independently of its answer and counterclaims.

All of this is somewhat beside the point, however, because Bostwick's claims against Altair and Alex Roofing are not in the nature of true third-party claims.  As discussed, Rule 14 allows "[a] defending party . . . , as third-party plaintiff, [to] serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it*." Fed. R. Civ. P. 14(a)(1) (emphasis added).  As this language suggests, "'[a] third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant. If the claim is separate or independent from the main action, impleader will be denied.'" *F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994) (quoting C.A. Wright, A. Miller, M.K. Kane, Federal Practice and Procedure, Vol. 6, § 1446, at 355–58 (1990)).  "Third-party complaints are therefore characterized by the defendant's attempt 'to transfer to the third-party defendant the liability asserted against him by the original plaintiff.'" *Long Term Care Corp., LLC v. Ramos*, No. CV 18-0281, 2018 WL 5885898, at *1, n. 1 (E.D. Pa. Nov. 8, 2018) (quoting 6 C. Wright & A. Miller, Federal Practice and Procedure § 1446 (3rd ed. 1971)).

In this case, the claims asserted against Bostwick sound in breach of contract, as they are predicated on various provisions of the lease agreement that Moxie claims Bostwick breached. Bostwick does not allege that Altair and Alex are potentially liable to it "for all or part of the claim" asserted by Moxie; rather, Bostwick is suing Altair and Alex under separate tort theories for damages related to business interruptions, the costs of testing and inspections, lost property that had to be discarded due to contamination, and potential harm to Bostwick's employees. *See* ECF No. 9, ¶¶183, 200-202. Thus, Bostwick's claims against Altair and Alex are not based on Moxie's claims against Bostwick, nor is any derivative liability alleged.

Even so, while Altair and Alex Roofing may not be proper third-party defendants, they may be joined as additional counterclaim defendants consistent with the requirements of Rules 19 and 20. *See* Fed. R. Civ. P. 13(h) (allowing for the joinder of additional parties on a counterclaim in accordance with Rules 19 and 20); *see also F.D.I.C. v. Bathgate*, 27 F.3d at 873-74 (court concluding that certain parties, though not properly named as third-party defendants, were properly joined as additional parties to the defendants' counterclaim pursuant to Rule 13(h)); *Long Term Care Corp.,* 2018 WL 5885898, at *1, n.1 (court noting that the defendant's claims against putative third-party defendants were properly construed as counterclaims rather than third-party claims and allowing joinder of those parties as additional counterclaim defendants under Rule 13(h)); *Balt. & Ohio R. Co. v. Cent. Ry. Servs., Inc*., 636 F. Supp. 782, 786 (E.D. Pa. 1986) (court finding that Rule 14 was inapplicable where the claims asserted by the defendants against the third-party defendants were not based upon the plaintiffs' claims against the defendants but were rather based on the defendant's counterclaim; allowing joinder of third-party defendants as defendants on the counterclaim); *accord Aliya Medcare Fin., LLC v. Nickell*, No. CV 14-07806 MMM EX, 2015 WL 4163088, at *12–13 (C.D. Cal. July 9, 2015)

8

(defendant could not file a third party complaint where its claims did not show the requisite

derivative or secondary liability on the part of third-party defendants; court noting that, instead,

defendant "should have filed a counterclaim and added the third party defendants as counter-

defendants under Rule 20").

Here, Altair and Alex Roofing appear to satisfy the requirements of joinder under Rule

20(a)(2), which permits the joinder of defendants in a single action if:

> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative
> with respect to or arising out of the same transaction, occurrence, or series of
> transactions and or occurrences; and

> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  As discussed, Bostwick has asserted identical tort theories against both

Altair and Alex Roofing based upon a common set of facts, and at least one of those tort theories

(strict liability for ultrahazardous activities) has also been successfully pleaded against Moxie.

Boswick's claims against Moxie, Altair and Alex are all predicated on the same occurrence and

involve common questions of fact.  In fact, this litigation was preceded by Bostwick's

commencement of a civil action in state court, wherein it named Moxie, Altair, and Alex

Roofing as defendants and asserted the same theories of liability that are now being litigated in

this case. Thus, Altair and Alex Roofing are more logically aligned as common defendants to

Bostwick's counterclaim in this civil action, and they should have been joined in that fashion

pursuant to Rule 13(h).

Nevertheless, for present purposes, the Court will address the substantive challenges

raised by Altair and Alex Roofing, as this will inform the manner in which Bostwick should

replead its counterclaims against them.  As mentioned, Bostwick has asserted claims against

Altair and Alex sounding in negligence *per se* (Count I), strict liability (Count II) and negligence (Count III).  The Court will address each cause of action *seriatim*.

### B.  <u>Count I - Negligence *Per Se*</u>

Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se*.  *Ramalingam v. Keller Williams Realty Group, Inc*., 121 A.3d 1034, 1042 (Pa. Super. Ct. 2015). However, a court will not use a statute or regulation as the basis of negligence *per se* where the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public. *Centolanza v. Lehigh Valley Dairies*, 635 A.2d 143, 150 (1993), *aff'd,* 658 A.2d 336 (Pa. 1995). In order to state negligence *per se* in Pennsylvania, a plaintiff must allege: "(1) the purpose of the statute [is], at least in part, to protect the interest of a group of individuals, as opposed to the public generally; (2) the statute or regulation must clearly apply to the conduct of the defendant; (3) the defendant must violate the statute or regulation; and (4) the violation of the statute must be the proximate cause of the plaintiff's injuries." *Ramalingam*, at 1042-43 (citing *Schemberg v. Smicherko*, 85 A.3d 1071, 1073-74 (Pa. Super. Ct. 2014)) (citation omitted).

Here, Bostwick's negligence *per se* claims are based upon Altair's and Alex Roofing's alleged violation of Pennsylvania's Asbestos Occupations Accreditation and Certification Act of 1990, 63 P.S. §§ 2101-2112 ("AOACA"), and EPA regulation 40 C.F.R. 61.145(b), which has been adopted and enforced by the Pennsylvania Department of Environment Protection Bureau of Air Quality ("PADEP").  *See generally* ECF No. 9, ¶¶ 170-185.  In particular, Bostwick alleges that Altair and Alex failed to comply with the notice requirements of 63 P.S. § 2108, which requires contractors performing work on asbestos and asbestos-containing materials to

notify the Pennsylvania Department of Labor and Industry ("DOL") at least five (5) days before beginning work. *Id.* at ¶¶ 171, 178.  In addition, Bostwick alleges that Altair and Alex failed to comply with the notice requirements of 40 C.F.R. 61.145(b), which requires the owner and operators of a renovation activity to provide at least 10 days' advance written notice to the EPA and PADEP of a renovation activity involving asbestos and asbestos-containing materials. *Id.* at ¶¶ 173 178.  Bostwick claims that, as a result of Altair's and Alex Roofing's failure to comply with these notice requirements, Bostwick sustained damages that "include but are not limited to property that had to be destroyed as a result of [asbestos] contamination, costs associated with business disruptions, and the costs of testing and inspections." *Id.*, at ¶¶ 182-183.

Altair and Alex Roofing assert that Bostwick cannot establish the first, second, and fourth elements of its negligence *per se* claim as a matter of law.  That is, Altair and Alex challenge Bostwick's ability to establish:  (i) that the notice provisions at issue are intended to protect the interest of a specific group of individuals, like Bostwick, as opposed to the public in general (Element 1); (ii) that the cited notice provisions apply to the conduct at issue in this case (Element 2), or (iii) that the alleged failure to provide notice proximately caused Bostwick's injuries (Element 4).  For reasons previously explained in connection with Moxie's Rule 12(b)(6) motion, the Court agrees that Bostwick cannot establish the first and fourth elements of its negligence *per se* claim; therefore, the claim must be dismissed.

### 1. <u>Intended Beneficiaries of Legislation at Issue</u>

In its opposition briefs, Bostwick argues that "[t]he federal and Pennsylvania regulations are intended to limit the exposure of tenants and occupants, like Bostwick, to harmful asbestos

and asbestos-containing materials." ECF No. 26, at 7; ECF No. 27, at 7.  However, this alleged intention is absent from the express purposes of the regulations themselves.

### a. **Pennsylvania's AOACA**

The purpose of Pennsylvania's AOACA is to ensure that persons engaged in any asbestos occupation are properly certified.[3] While building tenants like Bostwick may incidentally benefit from the DOL's enforcement of its certification requirements, they are not the intended object of the Act's purpose. Moreover, it is apparent that the Act does not create a private cause of action arising from the failure to comply with its requirements. Rather, enforcement of the Act's requirements is limited to the DOL and/or governmental authorities.  63 P.S. §§ 2106, 2109. Thus, the policy of the AOACA would not be furthered by allowing it to serve as the basis for a claim of negligence *per se*.  *See Fallowfield Dev. Corp. v. Strunk*, CIV. A. No. 89–8644, 1990 WL 52745, at *19 (E.D. Pa. Apr. 23, 1990) ("[A] court must examine the legislation and determine whether the policy of the statutory scheme will be furthered by allowing it to serve as the basis for a claim of negligence per se.") (citing *Frederick L. v. Thomas*, 578 F.2d 513, 517 n.8 (3d Cir. 1978)).

### b. **Clean Air Act**

The EPA regulations at 40 C.F.R. Part 61, Subpart M, promulgate rules under section 112 of the Clean Air Act ("CAA") for asbestos emissions.  National Emission Standards for Hazardous Air Pollutants; Asbestos NESHAP Revision, 55 Fed. Reg. 48,406 (Nov. 20, 1990); 40 C.F.R. § 61.140, et seq.  Failure to comply with the requirements set out in the asbestos

---

[3] This purpose is derived from 63 P.S. §2103, which provides that "It shall be unlawful for any person to engage in any asbestos occupation in any building without proper certification for that occupation from the department."

NESHAP constitutes a violation of Section 112 of the CAA. 42 U.S.C. § 7412(i)(3)(A). The stated purpose of the CAA is to protect and enhance the quality of the Nation's air resources, 42 U.S.C. §7401(b), and to encourage and promote federal, state, and local governmental action consistent with pollution prevention. 42 U.S.C. § 7401(c). Thus, the CAA and its regulations are designed to protect the general public from air pollution and contamination, not to protect building tenants and occupants from incurring the costs associated with asbestos contamination and cleanup, which is the type of harm for which Bostwick seeks to recover.  *See* ECF No. 9, at ¶¶ 182-183.  *See Gravlin v. Fredavid Builders and Developers*, 677 A.2d 1235, 1239 (Pa. Super. Ct. 1996) ("[I]t is well-settled that there must be a direct connection between the harm meant to be prevented by the statute, and the injury complained of").

Moreover, "as multiple federal courts have recognized, the Clean Air Act does not authorize a private cause of action for compensatory damages for alleged violations of the Act...." *Abuhouran v. Kaiserkane, Inc*., Civil No. 10–6609, 2011 WL 6372208 at *4 (D.N.J. Dec. 19, 2011) (listing cases). The absence of a private cause of action has been found to be "an indicator that the statute did not contemplate enforcement for individual harms." *Wagner v. Anzon, Inc*., 684 A.2d 570, 575 (Pa. Super. Ct. 1996) (citing *Centoianza v. Lehigh Valley Dairies, Inc.*, 635 A.2d 143, 150 (Pa. Super. Ct. 1993)). *See Satterfield v. J.M. Huber Corp*., 888 F. Supp. 1567, 1571 (N.D. Ga. 1995) (granting summary judgment for defendant on negligence *per se* claims based on finding that both "the federal and Georgia Clean Air Acts do not provide for an action for private recovery"). Thus, it is apparent that neither Bostwick, as an occupant and tenant of a building contaminated by asbestos, nor the costs it seeks to recover, are within the intended purpose of the CAA to protect and/or remediate.

### 2. **Proximate Cause of Bostwick's Injuries**

Additionally, Bostwick has failed to establish how Altair's or Alex Roofing's alleged failure to provide advance notice to governmental authorities of the subject roof work was the proximate cause of Bostwick's claimed injuries. Bostwick merely alleges that it "has sustained damages as a result of the failure by Alex Roofing and Altair to provide notice of the work as required by law." ECF No. 9, ¶ 182. Such a conclusory allegation is insufficient to establish proximate cause.

In its opposition brief, Bostwick attempts to bolster its position by suggesting that, "[h]ad Altair, Alex Roofing, and Moxie adhered to federal and state guidelines, Bostwick may have become aware of the risk of contamination before Alex Roofing undertook the work." ECF No. 26 at 7; ECF No. 27 at 7-8. But the regulations in question merely require prior notice to be given to state and federal environmental agencies; there is no provision in either the AOACA or the CAA's regulations that would require Altair, Alex Roofing and/or the governmental authorities to alert Bostwick or any other member of the public that notice has been given under the statute. Therefore, no reasonable inference can be drawn from the well pled factual averments that Bostwick would have received a forewarning or notice of a possibility of contamination if Altair or Alex Roofing had notified the relevant authorities about the impending roof work. Bostwick's argument in this regard does nothing to establish proximate cause.

For the foregoing reasons, Bostwick's negligence *per se* claim based upon the alleged violations of the notice requirements of the AOACA and EPA regulation 40 C.F.R. § 61.145(b) is not cognizable and will be dismissed. Although Bostwick has requested leave to amend, any amendment would be futile given the deficiencies noted above. Thus, dismissal of this claim will be with prejudice.

### C. __Count II - Strict Liability for Ultrahazardous Activities__

Bostwick's second claim entails allegations that Altair and Alex Roofing engaged in ultrahazardous activities and are strictly liable for any resulting harm.  In order to properly state a claim for strict liability for ultrahazardous activities in Pennsylvania, a plaintiff must allege that defendant conducted an activity that: (1) is not of common usage; (2) creates a foreseeable and highly significant risk of physical harm even when reasonable care is exercised by all actors; and (3) results in physical harm to the plaintiff.  *Albig v. Mun. Auth. of Westmoreland Cnty*., 502 A.2d 658, 662 (Pa. Super. Ct. 1985); *see also Kamuck v. Shell Energy Holdings GP, LLC*, Civil No. 4:11–CV–1425, 2015 WL 1345235, at *17 (M.D. Pa. Mar. 25, 2015) (finding natural gas drilling activities were not abnormally dangerous and strict liability should not apply because it could be done safely and was common and valuable to society). A claim for strict liability for abnormally dangerous activities can be stated only if the activity itself, and not the manner in which the activity is performed, is abnormally dangerous. *In re One Meridian Plaza Fire Litigation*, 820 F. Supp. 1460, 1474-75 (E.D. Pa. 1993), *rev'd on other grounds sub nom. Federal Ins. Co. v. Richard I. Rubin & Co., Inc*., 12 F.3d 1270 (3d Cir. 1993).

A plaintiff cannot simply allege that the defendants acted in a way that was inherently dangerous. Instead, the Court must consider the following factors:  the existence of a high degree of risk of some harm to the person, land or chattels of others; the likelihood that the harm which results from it will be great; the inability to eliminate the risk by the exercise of reasonable care; the extent to which the activity is not a matter of common usage; the inappropriateness of the activity to the place where it is carried on; and, the extent to which its value to the community is outweighed by its dangerous attributes. *Albig*, 502 A.2d at 662. "The court must determine as a

matter of law whether an activity is abnormally dangerous so that strict liability will be imposed." *Melso v. Sun Pipe Line Co*., 576 A.2d 999, 1003 (Pa. Super. Ct. 1990).

Here, Altair insists that "Bostwick fails [to] allege any facts to support that roof repair, even of roofs with asbestos-containing fibers, is an activity that is 'not of common usage.'" ECF No. 24, at 6. Alex Roofing similarly disputes that the "not of common usage" element has been pled. ECF No. 21 at 9. But as the Court previously observed in connection with Moxie's Rule 12(b)(6) motion, the details of the roof repairs that were actually performed have yet to be discovered or disclosed to the Court. Alex has attempted to shed light on this issue by submitting a copy of the contract for the roofing work; however, the Court will not consider that document in connection with Count II, as it constitutes material outside the pleading which is not appropriately before the Court on a Rule 12(b)(6) motion.[4] Thus, the Court is unable at this juncture to make a definitive finding as to whether or not the roof repair at issue was "of common usage."

Altair also argues that "Bostwick fails to claim that there was a high degree of risk of some harm to anyone, including Bostwick, from repairing a roof containing some asbestos material." ECF No. 24 at 7. However, this is precisely what Bostwick alleges in Count II -- *i.e.*,

---

[4]  A court reviewing a Rule 12(b)(6) motion must consider only the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters which may be judicially noticed. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd*., 181 F.3d 410, 426 (3d Cir. 1999). The reviewing court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

In this case, Bostwick did not append the contract for the roof work on the Leased Premises to its pleading, nor has Bostwick predicated its claims on any provision of that contract. The Court therefore declines Alex's invitation to consider the contract at this stage.

"[t]he roof work unnecessarily created a risk of harm to individuals located in the Leased Premises and to Bostwick's property." ECF No. 9, at ¶ 190.

Altair next objects that it is a property management company having nothing to do with actual roofing work and, therefore, Bostwick has failed to allege a basis for Altair's involvement in any ultrahazardous activity.  But the details of Altair's actual role in the project are as yet unknown and, at least at this stage, it is not unreasonable to infer that Altair oversaw the roofing work or otherwise had some involvement by virtue of its status as property manager of the Leased Premises.

Altair also insists that Bostwick has failed to plead any facts demonstrating its awareness that asbestos was present in the roof of the Leased Premises.  The Court disagrees.  Bostick has alleged that, as the result of testing conducted in March 2020, Moxie and its contractors were aware that asbestos was present in multiple areas and layers of the roof prior to the roofing work being undertaken. ECF No. 9, ¶¶26, 27.  Bostwick also alleges that the configuration of the roof above its offices made it inevitable that debris would fall into its office space, thus making asbestos contamination reasonably foreseeable.  *Id.*  A reasonable inference may be drawn from these allegations that Altair, as Moxie's property manager, was aware of the presence of asbestos in the roof and the foreseeability of contamination to Bostwick's office space.  Indeed, Bostwick alleges that it made Altair and Alex Roofing aware of debris falling into its office space but, "[d]espite this warning and their knowledge that the roof contained asbestos and asbestos-containing materials, [Altair and Alex Roofing] continued the roof work because there was 'good weather.'"  *Id*. at ¶188.  Although discovery may bear out a different version of events, Bostwick's allegations are sufficient at this point to establish Altair's awareness of asbestos in the roof of the Leased Premises.

For its part, Alex challenges Bostwick's allegations as they relate to the specific elements concerning risk of harm, and/or the remaining elements of its strict liability claim.  At the pleading stage, however, "a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009); *see also Walker v. CMG Mortg., Inc.,* No. CV 21-5381, 2022 WL 3213842, at *2 (E.D. Pa. Aug. 9, 2022).  In this Court's estimation, Bostwick has satisfied this standard.

Consequently, the Court will allow Bostwick to reassert its strict liability claims against Altair and Alex Roofing in an amended counterclaim.  Like Moxie, however, Altair and Alex Roofing may reassert their challenges to Bostwick's strict liability claim in a motion for summary judgment, if warranted, after a more fully developed record has been established through discovery.  *See Fiorentino v. Cabot Oil & Gas Corp.*, 750 F. Supp. 2d 506 (M.D. Pa. 2010) ("since the determination of whether or not an activity is abnormally dangerous is fact-intensive, courts often wait until discovery is complete before making this determination").

### D.  <u>Count III - Negligence</u>

Finally, Altair and Alex Roofing challenge the viability of Bostwick's negligence claim. "In Pennsylvania, the elements of a cause of action based upon negligence are: (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) defendant's failure to conform to the standard requirement; (3) a causal connection between the conduct and the resulting injury; [and] (4) actual loss or damage resulting to the plaintiff." *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005) (citations omitted).

In Count III of its third-party claims, Bostwick alleges that "Alex Roofing and Altair had a duty to Bostwick to ensure that the roof work was conducted in a safe and workmanlike manner that complied with all federal and state regulations."  ECF No. 9, ¶195.  More specifically, Bostwick alleges that "Alex Roofing had a duty to ensure that the roof work would not cause hazardous materials to contaminate the Leased Premises and to communicate the possibility that hazardous materials may be disturbed during the roof work."  *Id.* at ¶196.  Similarly, Bostwick avers that "Altair had a duty to warn Bostwick of the potential disturbance and release of asbestos and asbestos-containing material, to ensure that the roof work at [the Leased Premises] was conducted in a safe manner, and to ensure that hazardous materials did not contaminate the Leased Premises.  *Id.* at ¶197.  Bostwick claims that Alex and Altair breached these duties by failing to warn it of potential asbestos disturbance before beginning work and by negligently causing asbestos and asbestos-containing materials to contaminate its office space.  *Id.* at ¶¶199-200.  As a result of this negligence, it is alleged, Bostwick's employees were exposed to environmentally hazardous materials and Bostwick suffered damages in the form of the lost use of its office space and the destruction of its contaminated property.  *Id.* at ¶¶200-202.

Both Alex and Altair dispute that Bostwick has alleged the first element of its negligence claim -- *i.e.,* that Alex or Altair owed a duty of care to Bostwick relative to the roofing work performed.  Alex initially takes issue with Bostwick's averment that Alex had a duty to ensure its work "complied with all federal and state regulations."  ECF No. 9, ¶195.  Alex argues that, to the extent the "federal and state regulations" referenced in Count III, Paragraph 195 of Bostwick's pleading are the same ones referenced in Count I, they do not support Bostwick's negligence *per se* claim.  This proposition is accurate inasmuch as the Court has already ruled that the statutory and regulatory provisions referenced in Count I are not a viable predicate for

19

Altair's or Alex's alleged *per se* negligence.  Nevertheless, Alex's argument is not dispositive because the Court does not construe the claim in Count III as coextensive with the claim in Count I.  Rather, Bostwick's negligence claim in Count III is predicated, at least in part, on Alex's alleged duties to warn about potential asbestos contamination and/or to perform the subject roof work in a safe and workmanlike manner such that no contamination of the interior of the building would occur.  Both of these duties are separate from the notice requirements that serve as the basis for alleged negligence *per se* in Count I.  Accordingly, Alex's first argument for dismissal is not persuasive.

Alex next argues that, because its work at the Leased Premises was undertaken pursuant to a written contract with Moxie, the scope of its duty was defined by that agreement.  Alex maintains that it fully discharged its duties under the contract and had no contractual responsibilities concerning the protection of Bostwick's property.  On the contrary, Alex asserts that it was Moxie's responsibility under the contract to protect the property, materials and equipment in areas under the roof work from falling debris.

Altair similarly disputes that it had any duty of care relative to Bostwick.  Key for Altair is the absence of "any allegation that [it] is engaged in work as a roofing contractor, or in any way [holds] itself out as having any particular skills or expertise with regard to the installation of roofing, or the repairs of roofs."  ECF No. 24 at 8.  According to Altair, "Bostwick does not (and cannot) allege that Altair was responsible for supervising, inspecting or even observing Alex Roofing's work on the project in question."  *Id*.  Thus, Altair contends that it "has no duty to perform roofing work in an 'safe and workmanlike' manner, when it has not, in this case or any other, engaged in the performance of roofing work."  *Id.*

Relatedly, Altair disputes that it had any duty to notify or warn Bostwick concerning the possible contamination of its office space. First, Altair contends there are no allegations that it knew about the presence of asbestos or asbestos-containing materials in the roof prior to the work being undertaken. Second, Altair maintains that no valid law or regulation has been cited that required it to provide advance notice to Bostwick of an asbestos-related risk or hazard.

Having given due consideration to the arguments of Altair and Alex Roofing, the Court finds their arguments unavailing at this juncture. Under Pennsylvania law, "[a] contracting party may owe a duty, imposed by law and society, to perform its contractual obligations in such a manner as to avoid injury to third parties[.]" *Farabaugh v. Pennsylvania Turnpike Comm'n*, 911 A.2d 1264, 1283 (Pa. 2006). Indeed, in *Evans v. Otis Elevator Company*, 168 A.2d 573 (Pa. 1961), the Pennsylvania Supreme Court held that a company which contracted to inspect its customer's elevator could be liable in tort to an employee of the customer whose injury resulted from the company's negligent performance of its contractual obligation to inspect the elevators, even though no privity of contract existed between the elevator company and the injured employee. *See id.* at 575-76. The Court explained that, "[i]f a person undertakes by contract to make periodic examinations and inspections of equipment, such a elevators, he should reasonably foresee that the normal and natural result of his failure to properly perform such undertaking might result in injury not only to the owner of the equipment but also to third persons, including the owner's employees." *Id.* As Alex observes, the rule stated in *Otis Elevator* has been formalized in Section 324A of the Restatement (Second) of Torts, which addresses the "liability of third persons for negligent performance of an undertaking." *See Cantwell v. Allegheny County,* 483 A.2d 1350, 1353 (Pa. 1984) (applying Section 324A and

21

noting that "the essential provisions of this section have been the law in Pennsylvania for many years") (citing *Otis Elevator*).  Under Section 324A of the Restatement:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> >
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> >
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts §324A (1965).

In this case, Bostwick avers that Moxie contracted with Alex Roofing to complete the roof work at the Leased Premises and that Altair provided property management services during that same time frame.  ECF No. 9, ¶¶ 31, 166, 167, 168.  Both entities are alleged to have been involved in the roof work on the Leased Premises.  *Id*. at ¶¶ 2, 172.  Elsewhere in its pleading, Bostwick asserts that the presence of asbestos or asbestos-containing materials in the roof was made known to Moxie's contractors by virtue of testing that was conducted in March of 2020.  *Id*. at ¶¶26-27.  Bostwick further avers that the configuration of the roof made the likelihood of asbestos contamination in Bostwick's interior office space reasonably foreseeable.  *Id*.  From these allegations, it can fairly be inferred that Altair and Alex should have recognized that a failure to exercise reasonable care in undertaking the subject roof work, where asbestos or asbestos-containing materials were present, would have increased the risk of harm to Bostwick, which was leasing space directly below the work area.  Bostwick also alleges that Altair and Alex had a duty to warn them of possible contamination from the asbestos that was present in the

roof directly above them.  In alleging that Altair and Alex breached these duties, with resulting harm because of the ensuing contamination of its leased office space, Bostwick has pled a cognizable negligence claim; that is, Bostwick has "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."  *Fowler*, 578 F.3d at 213.

To the extent Alex and Altair dispute that they had any duty of care or duty to warn of possible harm to Bostwick, those issues are better resolved on a more fully-developed factual record.  Notably, courts determine the existence and scope of a contractor's legal duties under Section 324A by reference to the underlying contract.  *See Farabaugh*, 911 A.2d at 1267–1268 ("[A] construction manager's duty is defined by the intent of the contracting parties as reflected by their contractual designation of responsibilities...."); *Otis Elevator,* 168 A.2d at 575 ("It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract.").  Here, the record is devoid of any details concerning the nature and scope of Moxie's contractual arrangement with Altair.  And, while Alex Roofing has supplied a copy of its contract with Moxie, the Court's review of that document is not presently dispositive.  While Alex's contract lays out the tasks that comprised its intended "work scope," the contract tells the Court nothing definitive about the specific work that was actually undertaken by Alex and the manner in which the work was performed.  Discovery will no doubt assist in fleshing out these important details.  In addition, discovery may shed further light on which parties had involvement in the roofing project and their specific roles.  *See O'Hara v. Supervalu, Inc*., No. 327 MDA 2012, 2013 WL 11255542, at *3 (Pa. Super. Ct. Aug. 22, 2013) ("[W]e carefully examine the various contracts at issue, together with Zamias' relevant conduct

in and around the work site, to determine whether Zamias can be liable under either Section 324A or Section 414 of the Restatement (Second) of Torts.").

**IV.**   <u>**CONCLUSION**</u>

Based upon the foregoing reasons, the pending motions to dismiss Bostwick's third-party claims will be granted, but Bostwick will be given leave to replead its strict liability and negligence claims against Alex Roofing and Altair in an amended answer that names Alex and Altair as additional Counterclaim Defendants.

An appropriate order follows.

_Susan Paradise Baxter_
Susan Paradise Baxter
United States District Judge

24